**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**IKECHUKWU HYGINIUS OKORIE**                                    **PLAINTIFF**

**v.**                                             **CIVIL ACTION NO. 2:24-cv-63-TBM-RPM**

**UNIVERSITY MALL, LLC,** *et al.*                              **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Dr. Okorie filed suit in this Court on April 22, 2024, against Defendants University Mall, LLC, Joseph R. Tullos, James Poncho, Robert T. Jackson, Sr., and Jackson, Tullos, Rogers & Morgan, PLLC, alleging violations of the Truth in Lending Act, the Real Estate Settlement Procedures Act, the Fair Debt Collection Practices Act, the Racketeer Influenced and Corrupt Organizations Act, and his Fourteenth Amendment due process right to a fair trial. Before the Court is the Defendants' Motion to Dismiss [9] for failure to state a claim, a Motion to Dismiss [21] for lack of jurisdiction, and a Motion to Submit Additional Authority [34] in support of Rule 12(b)(6) and Rule 12(b)(1) Motions to Dismiss. Dr. Okorie has also filed a Motion to Disqualify [20] University Mall's attorney, Joseph R. Tullos, a Motion for Leave to File Sur-Reply [12], and a second Motion for Leave to File Sur-Reply [30].

For the reasons discussed below, the Defendants' Motion to Dismiss [9] for failure to state a claim is granted. Defendants' Motion to Dismiss [21] for lack of jurisdiction and Motion to Submit Additional Authority [34] are denied. Dr. Okorie's Motion to Disqualify Attorney [20] and Motions for Leave to File Sur-Replies [12], [30] are denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

This action, like many others pending in this Court, arises out of the foreclosure sale of property located at 3700 Hardy Street, in Hattiesburg.[1] *See* [1], p. 2. Royal Oaks Rental Properties—formed by Dr. Okorie and his wife to own and manage various real properties they bought—acquired the property "[s]everal years prior to the foreclosure, in December 2011." *University Mall, LLC v. Okorie*, No. 2:24-cv-91-KS, 2024 WL 4862986, at *9 (S.D. Miss. Nov. 21, 2024); *see also In re Okorie*, No. 19-50379-KMS, 2023 WL 7311173, at *3 (Bankr. S.D. Miss. Nov. 6, 2023) (setting forth detailed facts and history of the case), *aff'd*, No. 24-60255, 2024 WL 4471734 (5th Cir. Oct. 11, 2024); *see also MacMillan Bloedel Ltd. v. Flintkote Co.*, 760 F.2d 580, 587 (5th Cir. 1985) ("A court may take judicial notice of related proceedings and records in cases before the same court."). Located at the property was Inland Family Practice, which was a medical clinic owned and operated by Dr. Okorie, that did business as St. Michael's Urgent Care of Hattiesburg. [1], p. 2. University Mall acquired the property following a foreclosure sale on March 28, 2024, and received a trustee's deed for the property from Citizens Bank. [1], p. 2.

Following the foreclosure sale, Defendant Joseph Tullos, University Mall's Attorney, sent a letter to Dr. Okorie notifying him of the foreclosure and explaining that University Mall received a trustee's deed for the property from Citizens Bank. [1], p. 2. Dr. Okorie asserts that the letter also advised him that the urgent care's tenancy was terminated because of the foreclosure, but that

---

[1] On November 21, 2024, Judge Starrett granted University Mall a "judgment for possession of 3700 Hardy Street, with costs, and with back rent as described supra, as well as a writ of habere facias possessionem." *University Mall, LLC v. Okorie*, No. 2:24-cv-91-KS, 2024 WL 4862986, at *9 (S.D. Miss. Nov. 21, 2024). Judge Starrett did not however, adjudicate title—which is an issue before this Court. *Id.* ("Although the Court has relied on title deeds and other evidence to reach this decision, the Court stresses that it has not adjudicated title."). Pending before this Court is another case involving University Mall's quiet title action against Dr. Okorie, Royal Oaks Rental Properties, LLC, and Inland Family Practice, LLC. *Univ. Mall, LLC v. Okorie*, No. 2:24-cv-89-TBM-RPM, 2025 WL 624022 (S.D. Miss. Feb. 26, 2025).

University Mall would be willing to lease him the property. [1], p. 2. According to Dr. Okorie, Defendant "James Poncho"[2] then visited the urgent care clinic "proclaiming himself the new owner and requested rent payments from Dr. Okorie." [1], p. 3. "Dr. Okorie informed him that such actions were not permissible since Inland Family Practice and St. Michelas [sic] are under Chapter 11 bankruptcy protection." [1], p. 4. As a result, Dr. Okorie alleges that Poncho "threatened to change the building's locks and evict Dr. Okorie with police assistance if he failed to comply." [1], p. 3.

Accordingly, Dr. Okorie filed this action, arguing that, as an owner of the property, his ownership rights have been threatened by the Defendants' adverse claims. [1], p. 4. Dr. Okorie further contends that the foreclosure was flawed, and that a breach did not occur because Royal Oaks had conveyed the property to Dr. Okorie before dissolution. [24], p. 3. He is suing Defendants University Mall, LLC, Joseph R. Tullos James Poncho, Robert T. Jackson, Sr., and Jackson, Tullos, Rogers & Morgan, PLLC, alleging violations of Truth in Lending Act ("TILA"), the Real Estate Settlement Procedures Act ("RESPA"), the Fair Debt Collection Practices Act ("FDCPA"), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and the Fourteenth Amendment.

The Defendants have filed a Motion to Dismiss [9] under 12(b)(6) arguing that Dr. Okorie failed to state a claim because TILA, RESPA, and FDCPA do not apply given that Dr. Okorie's loans are commercials loans rather than consumer loans. They also argue that Dr. Okorie has failed to state a claim for a violation of the RICO Act or the Fourteenth Amendment. And the Defendants

---

[2] The Defendants submit that Dr. Okorie improperly named "James Poncho," rather than Eric James, who is a member and manager of University Mall, LLC, a Mississippi limited liability company. [21], p. 2.

filed a Motion to Dismiss [21] under 12(b)(1) for lack of subject matter jurisdiction because the claims asserted against them hinge on Dr. Okorie having a legal or equitable interest in the property.

## II. STANDARD OF REVIEW

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. FED. R. CIV. P. 12(b)(1). Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera–Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir. 1996). Because the burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir. 1980). When a Rule 12(b)(1) motion is filed alongside other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001). This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. *Id.*

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 304–305 (5th Cir. 2021). In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hester*, 11 F.4th at 305 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929

(2007))). The Fifth Circuit has explained the *Iqbal/Twombly* standard as follows:

> In order for a claim to be plausible at the pleading stage, the complaint need not
> strike the reviewing court as probably meritorious, but it must raise 'more than a
> sheer possibility' that the defendant has violated the law as alleged. The factual
> allegations must be 'enough to raise a right to relief above the speculative level.'

> *Oceanic Expl. Co. v. Phillips Petroleum Co. ZOC*, 352 F. App'x 945, 950 (5th Cir. 2009)

(citing *Twombly*, 550 U.S. at 570). The Court need not "accept as true conclusory allegations or

unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th

Cir. 2000) (citation omitted). "The issue is not whether the plaintiff[] will ultimately prevail, but

whether [he is] entitled to offer evidence to support [his] claim[s]." *Cook v. City of Dallas*, 683 F.

App'x 315, 318 (5th Cir. 2017) (citation omitted). Accordingly, the Court must determine whether

the plaintiff has sufficiently alleged the elements of the claims asserted. *See Thompson v. Greyhound

Lines, Inc.*, No. 3:12-cv-851-WHB, 2013 WL 12090328, at *3 (S.D. Miss. Jun. 12, 2013)

("arguments that attack the merits of a plaintiff's claims, rather than their sufficiency, are not

relevant to the failure to state a claim analysis. The pertinent question for the Rule 12(b)(6) inquiry

is whether Plaintiff has alleged the elements of the claims asserted.") (internal citations and

quotations omitted).

### III. SUBJECT MATTER JURISDICTION

The Defendants seek dismissal arguing that because all of Dr. Okorie's claims stem from

his belief that he did not lose title as of the foreclosure sale on March 28, 2024, the action should

be dismissed for lack of subject matter jurisdiction and/or failure to state a claim. [22], p. 5; [34],

p. 1. Thus, the Defendants assert that Dr. Okorie's claims must be dismissed for lack of standing. The Court is unconvinced as to standing.[3]

### A. Article III's case or controversy requirement

"Article III of the United States Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Crane v. Johnson*, 738 F.3d 244, 251 (5th Cir. 2015) (citing U.S. Const. art. III, § 2). The judicial doctrines of standing, ripeness, and mootness have evolved from this constitutional restriction. *Henderson v. Stalder*, 287 F.3d 374, 378 (5th Cir. 2002). "In order to have standing to assert federal jurisdiction, a plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 424 (5th Cir. 2013) (quoting *Spencer v. Kemna*, 523 U.S. 1, 7, 118 S. Ct. 978, 140 L. Ed. 2d 43 (1998)). "Mootness is the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)."*Deutsch v. Travis Cnty. Shoe Hosp., Inc.*, 721 F. App'x 336, 339 (5th Cir. 2018) (citations and internal quotations omitted). Finally, "[a] case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 833 F.2d 583, 587 (5th Cir. 1987) (citing *Thomas v. Union Carbide Agr. Prod. Co.*, 473 U.S. 568, 581, 105 S. Ct. 3325, 87 L. Ed. 2d 409 (1985)).

---

[3] The filing of a sur-reply is "heavily disfavored by courts." *Sam v. YRC, Inc.*, No. 3:14-cv-5-WHB-RHW, 2014 WL 11515602, at *1 (S.D. Miss. Aug. 4, 2014) (quoting *Warrior Energy Servs. Corp. v. ATP Titan M/V*, 551 F. App'x 749, 751 n.2 (5th Cir. 2014)). Although, leave to file a sur-reply may be granted in cases in which "the movant raises new legal theories or attempts to present new evidence at the reply stage", *see e.g. Murray v. TXU Corp.*, No. CIV.A. 303-cv-0888P, 2005 WL 1313412, at *4 (N.D. Tex. May 27, 2005*),* such showing has not been made in this case. Accordingly, Dr. Okorie's Motions for Leave to File Sur-reply [12], [30] will be denied.

The party invoking federal jurisdiction bears the burden of demonstrating standing to sue. *Lujan v. Def. Of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct 2130, 119 L. Ed. 2d 351 (1992). To meet this burden "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561.

## B.  Standing

"To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Lujan*, 504 U.S. at 560-61. If a plaintiff has not suffered an injury caused by the defendant that the court can remedy, then "there is no case or controversy for a federal court to resolve." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 141 S. Ct. 2190, 210 L. Ed. 2d 568 (2021) (quotation omitted). "An injury in fact is 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 473 (5th Cir. 2013) (quoting *Lujan*, 504 U.S. at 560). The injury-in-fact requirement "helps to ensure that the plaintiff has a 'personal stake in the outcome of the controversy.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 134 S. Ct. 2334, 2341, 189 L. Ed. 2d 246 (2014) (quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)).

Here, the Defendants argue that Dr. Okorie cannot prove an injury in fact because he did not have an interest in the property at the time of bringing this lawsuit on April 22, 2024. They assert that Dr. Okorie lost title upon breaching certain covenants within the deed of trust, which caused title to divest from Royal Oaks and vest in the Trustee, Citizens Bank. [22], p. 6. And even

if Dr. Okorie did not lose title after breaching the covenants within the deed of trust, the Defendants assert that Dr. Okorie lost title to the property after the foreclosure sale on March 28, 2024. While somewhat unclear, the Defendants do not seem to be arguing that Dr. Okorie never had title in his name to the property. According to Dr. Okorie's Complaint, he asserts violations of the Truth in Lending Act, the Real Estate Settlement Procedures Act, the Fair Debt Collection Practices Act, the Racketeer Influenced and Corrupt Organizations Act, and his Fourteenth Amendment due process right to a fair trial. [1], p. 5-12. And within Dr. Okorie's prayer for relief, he seeks damages for certain pre-foreclosure actions of the Defendants. He also points to certain post-foreclosure actions, but Dr. Okorie seems to dispute the legitimacy of the foreclosure itself. At the standing stage, the merits "are accepted as valid." *Arnesen v. Raimondo*, No. 1:23-cv-145-TBM-RPM, 2024 WL 377820, at *7 (S.D. Miss. Jan. 31, 2024) (citing *Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1647-48, 212 L. Ed. 2d 654 (2022) (assuming that, for standing purposes in a First Amendment challenge, the challenged regulation unconstitutionally burdened speech)). Thus, the alleged injuries are "concrete and particularized, and actual or imminent, not conjectural or hypothetical." *See Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 473 (5th Cir. 2013) (defining injury in fact). Accordingly, while his claims are murky and Dr. Okorie's title chain prior to the foreclosure is certainly not the most clear, he has still met his burden of establishing Article III standing.

For the reasons stated above, the Defendants Motions to Dismiss [22], [34] are denied on such grounds. The Court now pivots to discuss the Defendants' initial Motion to Dismiss under 12(b)(6) for failure to state a claim.

## IV. MOTION TO DISMISS

The Defendants assert that Dr. Okorie's claims should be denied because his Complaint fails to state a claim upon which relief can be granted. [8], p. 4. The Court agrees. The Court will begin by addressing each of Dr. Okorie's claims against the Defendants and will then address Dr. Okorie's Motion to Disqualify [20] attorney, Joseph R. Tullos.

### A.  Truth in Lending Act

"Under TILA, a creditor ... shall disclose to the person who is obligated on a ... consumer credit transaction the information required under this subchapter." *Lea v. Buy Direct, L.L.C.*, 755 F.3d 250, 252 (5th Cir. 2014). TILA's disclosure protections "do not apply to all credit transactions; the Act does not cover credit transactions involving extensions of credit for business or commercial purposes . . .". *Tower v. Moss*, 625 F.2d 1161, 1166 (5th Cir. 1980); *Billings v. Propel Fin. Servs., L.L.C.*, 821 F.3d 608, 609-10 (5th Cir. 2016).

Dr. Okorie's TILA claim fails. Courts have dismissed TILA claims where the relevant credit transaction had an obvious business or commercial purpose. *See Dixon v. Toyota Motor Credit Corp.*, 794 F.3d 507, 509 (5th Cir. 2015) ("TILA provisions do not apply to credit transactions primarily for business, commercial, or agricultural purposes ... or to organizations"). The property housed Inland Family Practice, which did business as St. Michael's Urgent Care of Hattiesburg.[4] [1], p. 2. Dr. Okorie refers to the property as "the clinic." *Id.* at 3. Dr. Okorie's TILA claim is based on commercial loans obtained for his medical practice, and TILA does not apply to such loans. *See LaPorte v. Countrywide Home Loans, Inc.*, No. 3:08–cv–408, 2009 WL 2905934, at *2

---

[4] The loan at issue was listed as a commercial loan with Citizens Bank. *See In re Okorie*, No. 19-50379-KMS, 2023 WL 7311173, at *4 (Bankr. S.D. Miss. Nov. 6, 2023), *aff'd*, No. 2:23-cv-173-HSO-BWR, 2024 WL 2703780 (S.D. Miss. May 22, 2024), *aff'd sub nom. Matter of Okorie*, No. 24-60255, 2024 WL 4471734 (5th Cir. Oct. 11, 2024); *see also MacMillan Bloedel Ltd. v. Flintkote Co.*, 760 F.2d 580, 587 (5th Cir. 1985) ("A court may take judicial notice of related proceedings and records in cases before the same court.").

(E.D. Tenn. Sept. 3, 2009) ("Similarly, the court finds that plaintiff in the instant action obtained the property for commercial rental purposes; RESPA and TILA therefore do not apply to the mortgage."); *Daniels v. SCME Mortg. Bankers, Inc.*, 680 F. Supp. 2d 1126, 1131 (C.D. Cal. 2010) (granting motion to dismiss TILA claim, reasoning that "[b]ecause the property at issue was clearly not owner occupied, Plaintiff's loan was not for a personal purpose under TILA").

Even if TILA applies to Dr. Okorie's loans, he has failed to plead how, and in what manner, the Defendants have violated TILA. *See Garcia v. Universal Mortg. Corp.*, No. 3:12-cv-2460-L, 2013 WL 1858195, at *6 (N.D. Tex. May 3, 2013) (dismissing TILA claim where plaintiffs' allegations failed to explain how defendant violated the TILA or to identify the particular provision of the TILA it allegedly violated). Dr. Okorie "asserts that the Defendants seek to enforce a sale that was arrived at, in violation of TILA." [1], p. 6. Every other allegation Dr. Okorie makes in regards to TILA concerns Citizens Bank. However, Citizens Bank is not a Defendant in this case. The Defendants are University Mall, LLC, Joseph R. Tullos, James Poncho, Robert T. Jackson, Sr., and Jackson, Tullos, Rogers & Morgan, PLLC. Absent an allegation that shows how, and in what manner, the Defendants violated TILA, dismissal is warranted. *See Dominick v. Chase Home Fin. LLC*, No. CV 11-0337-PHX-JAT, 2012 WL 78886, at *2 (D. Ariz. Jan. 11, 2012) (dismissing *pro se* plaintiff's TILA claims as conclusory); *Smith v. Aurora Loan Servs.*, No. CIV S-10-0198-MCE-DAD-P, 2010 WL 3504899, at *3 (E.D. Cal. Sept. 7, 2010) (finding that *pro se* plaintiff's conclusory allegations did not state a claim under TILA).

For the reasons stated above, Dr. Okorie's TILA claim is dismissed for failure to state a claim upon which relief can be granted.

**B. Real Estate Settlement Procedures Act**

"RESPA is a consumer protection statute that, in relevant part, obligates a covered loan servicer to respond to a borrower's qualified written requests." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987 (5th Cir. 2019) (citing 12 U.S.C. § 2605(e)). "A qualified written request is a written request for information relating to the servicing of [a] loan. *Id.* (citing § 2605(e)(1)(A)). "When a borrower sends a qualified written request, the loan servicer must, among other actions, return a written response acknowledging receipt of the correspondence." *Id.* (citing § 2605(e)(2)(A)–(C)). Additionally, to state a claim, a plaintiff must plead actual damages. *Robins v. PHH Mortgage Corp.*, No. 4:20-cv-1163, 2020 WL 5604042, at *4 n.3 (S.D. Tex. Sept. 18, 2020) (citing *Whittier v. Ocwen Loan Servicing, L.L.C.*, 594 F. App'x 833, 836 (5th Cir. 2014)

Dr. Okorie's RESPA claim fails. The "principal purpose of RESPA is to protect home buyers from material nondisclosures in settlement statements and abusive practices in the settlement process." *Cortez v. Keystone Bank, Inc.*, No. 98-2457, 2000 WL 536666, at *10 (E.D. Pa. May 2, 2000). Thus, RESPA "does not apply to credit transactions involving extensions of credit . . . primarily for business, commercial, or agricultural purposes . . ." *Pearson v. JP Morgan Chase Bank, N.A.*, No. 4:18-cv-627, 2019 WL 2057223, at *2 (E.D. Tex. May 9, 2019). It is clear that the loan taken out on the property was for Dr. Okorie's medical practice. Conversely, RESPA does not apply to such loans because the property concerns a commercial loan and not a consumer loan. *See Atuahene v. Sears Mortg. Corp.*, No. CIV.A. 98-930, 2000 WL 134326, at *5 (E.D. Pa. Feb. 4, 2000) (dismissing RESPA claim where plaintiff failed to carry his burden to show that his dispute avoided the business purpose exemption of RESPA); *see also Pearson*, 2019 WL 2057223, at *2; *LaPorte*, 2009 WL 2905934, at *2 ("Similarly, the court finds that plaintiff in the instant action obtained the property for commercial rental purposes; RESPA and TILA therefore do not apply to the

11

mortgage."); *Rau v. Calvert Invs., LLC*, No. 19-10822, 2019 WL 6339817, at *5 (E.D. Mich. Nov. 27, 2019) (citing 12 C.F.R. § 1024.5(b)(2) (exempting "[b]usiness purpose loans ... for ... commercial purposes" from RESPA)).

Additionally, Dr. Okorie has failed to allege a claim because his allegations are insufficient to establish a violation. Dr. Okorie asserts that RESPA "requires Citizens Bank to conduct an investigation of a qualified written request and make appropriate corrections to a consumer's account." [1], p. 7. He alleges that he has "disputed Citizens Bank's ownership of the alleged debt" by written communication to Citizens Bank. *Id*. He further alleges that "Citizens Bank has failed to make appropriate corrections" and has "failed to conduct reasonable investigations . . ." *Id*. In essence, Dr. Okorie's RESPA allegations concern Citizens Bank, but Citizens Bank is not a party to this action.

For the reasons stated above, Dr. Okorie's RESPA claim is dismissed.

**C. Racketeer Influenced and Corrupt Organization Act**

According to Dr. Okorie, the Defendants are seeking to coerce him into entering into a lease agreement. [1], p. 10. A successful RICO claim alleges "(1) the identification of a person, who, (2) through a pattern of racketeering activity, (3) uses or invests income derived therefrom to acquire an interest in or to operate an enterprise engaged in interstate commerce, or acquires, maintains an interest in, or controls such an enterprise." *Nix v. Major League Baseball*, 62 F.4th 920, 931 (5th Cir. 2023). "'A pattern of racketeering activity consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity.'" *K&F Rest. Holdings, Ltd. v. Rouse*, Civil Action No. 16-293, 2018 WL 3553422, at * 17 (M.D. La. July 24, 2018), *aff'd on other grounds*, 798 F. App'x 808 (5th Cir. 2020) (quoting *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 523–24 (5th Cir. 2016)). "The predicate criminal acts can be

violations of either state or federal law." *Id*. (citing *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009))

The Court finds that Dr. Okorie's RICO claim fails "because the complaint insufficiently pleads a continuous pattern of racketeering activity or an agreement to commit at least two predicate acts of racketeering activity[.]" *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992). Dr. Okorie alleges, in a conclusory manner, that the Defendants and Citizens Bank are responsible for unlawfully depriving him of his property through the misuse of the foreclosure process. [1], p. 10. He also alleges in a conclusory fashion that the "Defendants relied on an illegal foreclosure sale initiated by Citizens Bank," and they have "threatened to evict Dr. Okorie from the property." *Id*. at 9. Without more, Dr. Okorie has failed to plausibly plead a RICO claim. Additionally, Dr. Okorie provides no explanation for why the claims against the lawyers are being brought for such conduct. Dr. Okorie's RICO claim warrants dismissal. *See Manax v. McNamara*, 842 F.2d 808 , 812 (5th Cir. 1988) (approving dismissal of RICO conspiracy claim because plaintiff failed to sufficiently plead the existence of a RICO enterprise); *Bendfeldt v. Window World, Inc.*, No. 5:17-cv-39-GCM, 2017 WL 4274191, at *7 (W.D.N.C. Sept. 26, 2017) (granting motion to dismiss where amended complaint fails to state a RICO claim); *Est. of Eliason v. Corp. of the President of the Church of Jesus Christ of Latter Day Saints*, No. 2:23-cv-785-TS-CMR, 2024 WL 2750826, at *2 (D. Utah May 29, 2024) (finding that the complaint "fails to allege a plausible RICO claim against any of the Defendants and will therefore dismiss the claim.").

For the reasons state above, Dr. Okorie's RICO claim is dismissed.

### D. Fair Debt Collection Practices Act

"The FDCPA's purpose is to eliminate abusive debt collection practices by debt collectors. Because Congress clearly intended the FDCPA to have a broad remedial scope, it should be

construed broadly and in favor of the consumer." *Manuel v. Merchants & Pro. Bureau, Inc.*, 956 F.3d 822, 826 (5th Cir. 2020) (internal citations and quotations omitted). "To state a claim under the FDCPA, Dr. Okorie must show (1) that he was the object of collection activity arising from a consumer debt; (2) that Defendant is a debt collector as defined by the FDCPA; and (3) that Defendant engaged in an act or omission prohibited by the FDCPA." *Douglas v. Select Portfolio Serv., Inc.*, No. 4:14-cv-1329, 2015 WL 1064623, at *4 (S.D. Tex. Mar. 11, 2015); *Calogero v. Shows, Cali & Walsh, L.L.P.*, 970 F.3d 576, 581 (5th Cir. 2020) (citing *Douglas* as stating elements of FDCPA claim). In relevant part, the FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(a)(6).

Dr. Okorie's FDCPA claim fails. FDCPA does not apply to his loan given that the property concerns a commercial loan and not a consumer loan. *See Hall v. Phenix Investigations*, 642 F. App'x 402, 405 (5th Cir. 2016) (finding that the Fair Debt Collection Practices Act does not apply to commercial debt collection practices); *First Gibraltar Bank, FSB v. Smith*, 62 F.3d 133, 134–36 (5th Cir. 1995) (collection efforts related to personal guaranty of business debt are not "debts" within the meaning of the FDCPA because they are not for personal purposes).

Even if the FDCPA applied to Dr. Okorie's loan, he has failed to allege a claim. He asserts that "Citizens Bank is a debt collector as defined by the FDCPA because it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another and its collection activities are covered by the FDCPA." [1], p. 11. He fails to allege facts to plausibly plead that the Defendants in this case are debt collectors as defined by the FDCPA. *Id.* And such allegations are insufficient because "the term 'debt collector' specifically refers to those

who are collecting a debt on behalf of another. It does not apply to creditors—like [Citizens Bank]—who [would be collecting] on their own debts." *Rushing v. Exter Fin. LLC*, No. 3:22-cv-1704-G, 2022 WL 17083660, at *3 (N.D. Tex. Oct. 26, 2022), *report and recommendation adopted*, No. 3:22-cv-1704-G, 2022 WL 17084143 (N.D. Tex. Nov. 17, 2022); *see also Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) ("[A] debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned."); *Bent v. Mackie Wolfe Zientz & Mann, P.C.*, No. 3:13-cv-2038-D, 2013 WL 4551614, at *3 (N.D. Tex. Aug. 28, 2013) ("Plaintiffs' assertion that Defendant undertook the role of 'debt collector' is a legal conclusion that courts are not bound to accept as true.").

Because Dr. Okorie does not plausibly plead that any of the named Defendants are debt collectors as defined by the FDCPA, he fails to state a claim for relief warranting dismissal. *See Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 722 (5th Cir. 2013) (the defendant was not a debt collector, and it was therefore not subject to the FDCPA); *Horton v. M & T Bank*, No. 4:13-cv-525-A, 2013 WL 6172145, at *9 (N.D. Tex. Nov. 22, 2013) (because "plaintiffs quoted the FDCPA definition of 'debt collector' ... but directed the court to no facts in the second amended complaint that support an allegation that Bank Defendants fall within that definition," the court dismissed their FDCPA claims).

For the reasons stated above, Dr. Okorie's FDCPA claim is dismissed. *See Johnas v. Broyles*, No. 23-cv-8994-PKC-MMH, 2025 WL 80546, at *5 (E.D.N.Y. Jan. 13, 2025) (citing *Sanchez v. Hoosac Bank*, No. 12-cv-8455-ALC, 2014 WL 1326031, at *4 (S.D.N.Y. Mar. 31, 2014) (dismissing FDCPA claim where "[t]he loans at issue ... were clearly commercial loans, as

15

indicated on the loan agreements as each loan entered was a 'business loan agreement,' secured by a 'commercial promissory note.'")).

### E. Fourteenth Amendment Due Process

The Due Process Clause of the Fourteenth Amendment provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the Unites States; nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; *see also Zinermon v. Burch*, 494 U.S. 113, 125, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990) (it is the deprivation of a constitutionally protected interest without due process of law that is unconstitutional). "The two sources thus far recognized as establishing such an interest are (i) state statutes and (ii) legal contracts between a state agency and the individual." *Coghlan v. Starkey*, 845 F.2d 566, 569 (5th Cir. 1988), *supplemented*, 852 F.2d 806 (5th Cir. 1988) (citation omitted). When conducting a due process analysis, courts must first ask "whether there exists a liberty or property interest of which a person has been deprived." *Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S. Ct. 859, 178 L. Ed. 2d 732 (2011); *see also Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 734 (5th Cir. 2008). "To bring a procedural due process claim under § 1983, a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001). It is well-settled that an entity is only liable for claims based on constitutional violations if the entity is held to be a government actor. *Dusenbery v. United States*, 534 U.S. 161, 167, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002).

Here, Dr. Okorie's claim fails because he does not plead sufficient facts to maintain a claim on this ground against the Defendants. "[Section] 1983 claims against these defendants were properly dismissed because he failed to allege any facts that could conceivably support the requisite

state action under color of law." *Govea v. ATF*, 207 F. App'x 369, 372 (5th Cir. 2006) (citation omitted); *see also Johnson v. Tyson Foods, Inc.*, 607 F. Supp. 3d 790, 800 n.3 (W.D. Tenn. 2022) ("However, when a plaintiff has failed to plead facts supporting a finding of government action, as in the present case, dismissal is warranted.") (citation omitted).

Dr. Okorie asserts that "as an owner of the property, [his] ownership rights to the property are threatened by the Defendants adverse claims thereof." [1], p. 5. He also alleges that the Defendants seek to benefit from a foreclosure sale that was conducted in violation of his due process "right to a fair trial."[5] *Id*. at 12. Dr. Okorie further alleges that Citizens Bank foreclosed on the property while there were pending cases disputing their alleged debt. *Id*. at 13. Dr. Okorie has potentially alleged a property interest, but he has not alleged facts showing state action. *See Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 747–48 (5th Cir. 2001) (discussing the state action requirement). Since, Dr. Okorie has not stated a procedural due process claim against the Defendants, his due process claim warrants dismissal. *See Hurtt v. Town of Hope Mills*, No. 5:21-cv-348-FL, 2022 WL 2032287, at *4 & 7 (E.D.N.C. June 6, 2022).

For the reasons, Dr. Okorie due process claim is dismissed.

## V. MOTION TO DISQUALIFY

Dr. Okorie moves to disqualify University Mall's attorney, Joseph R. Tullos. This Motion is frivolous, just as the lawsuit itself. Nonetheless, this Court will set forth why the Motion has no merit.[6]

---

[5] Based on Dr. Okorie's allegations, the Court construes his claim to be a due process claim under the Fourteenth Amendment.

[6] This continues a pattern of Dr. Okorie filing baseless motions. *See, e.g.*, *Okorie v. Citizens Bank*, No. 2:24-cv-35-TBM-RPM, 2024 WL 1493804, at * 1 n.1 (S.D. Miss. Apr. 5, 2024), *appeal dismissed sub nom. Okorie v. Smallwood*, No. 24-60166, 2024 WL 4512076 (5th Cir. Jul. 31, 2024) ("He has brought claims in state court and federal court, and pursued appeals to the Mississippi Supreme Court, the United States District Court, the Fifth Circuit, and the United

Dr. Okorie does not allege that attorney Joseph R. Tullos has ever represented him. Instead, Dr. Okorie argues that because Tullos was named as a co-defendant in one of Dr. Okorie's other cases, Tullos's representation of University Mall in this action presents a conflict of interest under Rules 1.7 and 3.7 of the Mississippi rules of Professional Conduct. For the reasons discussed below, Dr. Okorie's Motion is without merit.

"As a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification." *In re Yarn Processing Patent Validity Litigation*, 530 F.2d 83, 88 (5th Cir. 1976); *see also FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1316 (5th Cir. 1995) (A disqualification inquiry, particularly when instigated by an opponent, presents a palpable risk of unfairly denying a party the counsel of his choosing). This is because "[a] litigant should not be permitted to utilize a disqualification issue as part of his trial strategy." *Potashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1115 (5th Cir. 1980). As a result, the party moving for disqualification has the burden of proof. *See generally Occu-Health, Inc. v. Mississippi Space Servs.*, No. 1:06-cv-159-LG-RHW, 2006 WL 2290472, at *2 (S.D. Miss. Aug. 9, 2006).

"Motions to disqualify are governed by two sources of authority." *United States v. Bernegger*, No. 1:07-cr-176-MPM, 2015 WL 6394797, at *4 (N.D. Miss. Oct. 22, 2015).

> First, attorneys are bound by the local rules of the court in which they appear. Federal district courts usually adopt the Rules of Professional Conduct of the states where they are situated. Second, because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law.

*Cole v. Ruidoso Mun. Sch.,* 43 F.3d 1373, 1383 (10th Cir. 1994) (citing *In re Am. Airlines, Inc.*, 972 F.2d 605 (5th Cir. 1992)). Courts should "consider the motion governed by the ethical rules

---

States Supreme Court. In the Bankruptcy Court alone Dr. Okorie has filed three bankruptcy cases, six adversary proceedings, fifteen objections to claims, and countless motions for sanctions and stay violations—many of which were found to be frivolous.").

announced by the national profession in the light of the public interest and the litigant's rights."

*In re Dresser Indus., Inc.,* 972 F.2d 540, 543 (5th Cir. 1992). A court may also consider "(1) the

appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and

(3) the likelihood of public suspicion from the impropriety outweighs any social interests which

will be served by the lawyer's continued participation in the case." *Id.* at 544.

Rule 1.7 of the Mississippi Rules of Professional Conduct provides that "[a] lawyer shall

not represent a client if the representation of that client will be directly adverse to another client."

Miss. R. Prof. Conduct 1.7(a). Because Dr. Okorie does not allege that Tullos has ever

represented him, however, Rule 1.7(a) is inapplicable. Similarly, Rule 1.7(b) provides that:

> (b) A lawyer shall not represent a client if the representation of that client may be
> materially limited by the lawyer's responsibilities to another client or to a third
> person, or by the lawyer's own interests, unless the lawyer reasonably believes:
>> (1) the representation will not be adversely affected; and
>> (2) the client has given knowing and informed consent after consultation.
>> The consultation shall include explanation of the implications of the
>> representation and the advantages and risks involved.

Miss. R. Prof. Conduct 1.7(b). Because Tullos asserts that he "does not believe any adverse

consequences would redound to University Mall . . . by his continued representation" and because

University Mall has "given their informed consent for the representation to continue," Dr.

Okorie's argument also fails under Rule 1.7(b)(2). [25], pps. 5-6.

Dr. Okorie's argument further fails under Rule 3.7, which provides that "a lawyer shall not

act as advocate at a trial" where the lawyer is likely to be a necessary witness. Miss. R. Prof.

Conduct 3.7. Dr. Okorie states that Tullos' personal stakes in related legal matters critically

impair his capacity to provide dedicated and unbiased legal advocacy to University Mall, LLC.

[20], p. 2. Specifically, Dr. Okorie asserts that given the overlap of issues between this case and the

related litigation, that Tullos is likely to be called as a witness. *Id.* But Dr. Okorie does not identify

how Tullos is likely to be a witness here. Without more, Dr. Okorie has not demonstrated Rule 3.7 would be implicated by Tullos' continued representation of University Mall.

Finally, the standards developed under federal law weigh against granting Dr. Okorie's Motion to Disqualify since he presents a palpable risk of unfairly denying University Mall of the counsel of its choosing. And "[l]itigants do have a right to be represented by counsel and this ordinarily implies a right to lawyers of their choice." *McCuin v. Texas Power & Light Co.,* 714 F.2d 1255, 1262 (5th Cir. 1983); *FDIC,* 50 F.3d at 1316. Moreover, as the movant, Dr. Okorie faces an uphill battle because courts often do not disqualify attorneys on the grounds of conflict of interest "unless the former client moves for disqualification," which has not happened here. *In re Yarn Processing Patent Validity Litigation*, 530 F.2d at 88; *see also Diagnostic Affiliates of Ne. Hou, LLC v. United Health Grp., Inc.*, No. 2:21-cv-00131, 2022 WL 20717538, at *3 (S.D. Tex. Jan. 18, 2022) (presumptions that might work for a client complaining of his own lawyer do not belong in the hands of an opponent).

In sum, Dr. Okorie does not show how Tullos' representation will exhibit "(1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case." *See Dresser*, 972 F.2d at 544. Dr. Okorie does not adequately demonstrate how Tullos might have violated the standards developed under federal law, so that his disqualification from proceedings might be necessary. Instead, he presents conclusory allegations. This Court finds that disqualification is unwarranted under both Mississippi Rules of Professional Conduct and the standards developed under federal law. For these reasons, the Court denies Dr. Okorie's Motion to Disqualify [20].

## VI. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that the Defendants' Motion to Dismiss [9] for failure to state a claim is GRANTED.

IT IS FURTHER ORDERED AND ADJUDGED that the Defendants' Motion to Dismiss [21] is DENIED.

IT IS FURTHER ORDERED AND ADJUDGED that Dr. Okorie's Motion to Disqualify [20] Attorney Joseph R. Tullos is DENIED.

IT IS FURTHER ORDERED AND ADJUDGED that Dr. Okorie's Motion for Leave to File Sur-Reply [12] and second Motion for Leave to File Sur-Reply [30] are DENIED.

IT IS FURTHER ORDERED AND ADJUDGED that the Defendants' Motion to Submit Additional Authority [34] is DENIED.

This, the 31st day of March, 2025.

TAYLOR B. McNEEL
UNITED STATES DISTRICT JUDGE